## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

ROBIN DORAN, JAMES PARSONS, )
CHARLES PHILLIPS, and VICKI )
PAGE CAMPBELL, )
 )
   Plaintiffs, )
 )
   v. )  Case No. 07-CV-04158-NKL
 )
MISSOURI DEPARTMENT OF )
SOCIAL SERVICES, by and through )
its Director, DEBORAH E. SCOTT, )
 )
   Defendants. )

## ORDER

Plaintiffs Robin Doran, James Parsons, Charles Phillips, and Vicki Page Campbell, as class representatives ("Plaintiffs"),  sued Defendant Missouri Department of Social Services, by and through its Director Deborah E. Scott ("Department"), for placing Medicaid liens on their state workers' compensation settlements in violation of 42 U.S.C. § 1983, § 1396p(a)(1), and § 1396(k).  Before the Court is the Department's Motion for Summary Judgment [Doc. 54].  For the following reasons, the Court grants in part and denies in part the Department's motion.

## I. BACKGROUND

The following facts are viewed in the light most favorable to the Plaintiffs who are the non-movants.  *See Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir.1991).

1

When a Medicaid recipient is injured on the job, Missouri Medicaid sometimes pays for the worker's medical treatment. The Department then files a form lien notice in the Medicaid recipient's workers' compensation case to recover the cost of medical care previously provided to the Medicaid recipient. When the Medicaid recipient receives a settlement award, the Department collects on the lien out of that award.

On February 9, 2005, the United States Court of Appeals, Eighth Circuit, decided *Ahlborn v. Arkansas Department of Human Services*. *See Ahlborn,* 397 F.3d 620 (8th Cir. 2005), *aff'd* 547 U.S.268 (2006). The *Ahlborn* court held that the federal anti-lien statute, codified at 42 U.S.C. § 1396p(a)(1) ("Federal Anti-Lien Statute"), prevented a state from asserting a lien against a worker's compensation settlement except to the extent the settlement covered medical costs. *Id.*, 397 F.3d at 628.

The parties in the instant case agree that *Ahlborn* applies to the Department. They agree that the Department may only recover funds from that portion of Missouri Medicaid recipients' settlement award which reimbursed medical costs. They agree that the Department violates federal law if it seeks to recover funds meant to reimburse for other types of injury such as disability, wages, or pain and suffering. However, the Department's lien notices have not changed since the February 2005 *Ahlborn* ruling. The Department admits that it is doing nothing to assure compliance with *Ahlborn*.

The dollar amount of the lien notice is the full amount of money paid by Medicaid following the recipients' work-related injuries. Both before and after *Ahlborn*, the Department's lien notice stated:

2

> Section 287.266 RSMo. . . . grants the department a lien upon *any* funds owed to or received by the employee . . . as a result of *any compensable injury, occupational disease or disability*. The department may directly receive reimbursement of the total amount of any injury related payments made on or behalf of the Medicaid recipient . . . .

(Pl. Sugg. Supp. Summ. J. Exs. 5-7 (emphasis added).) The Department admits that it should not assert liens on the non-medical portions of settlement awards, but notes that it asserts its liens at a time when it does not know what portion of any future settlement will be for medical expenses. However, the head of the Department's Cost Recovery division believes that the Department could change its notice. The Department admits that it has no intent to do so.

The Department has access to settlement stipulations from Medicaid recipients' workers' compensation cases. The Department does not review those stipulations to determine whether they include medical awards. The Department does not review the circumstances surrounding settlements to assure it collects from only medical portions of settlement awards. The Department has not taken steps to determine whether it has collected payment out of non-medical portions of settlement awards. The Department has never refunded a Medicaid lien that was taken in violation of the Federal Anti-Lien law. The Department has not notified any Medicaid recipient of the impact of the *Ahlborn* decision on its lien process. (Pl. Sugg. Supp. Mot. Summ. J. Ex. 8.)

The Department has no specific administrative procedure for a Medicaid recipient to challenge a Medicaid lien it asserted in a workers' compensation case. The Department has never notified any Medicaid recipient of any procedure for challenging those liens.

3

The Department does state that it will review medical records if notified in writing of a challenge.

Plaintiffs[1] were each Missouri Medicaid recipients when they were injured during the course of their employment. Medicaid paid medical expenses related to Plaintiffs' workplace injuries. Each Plaintiff filed a workers' compensation case with the Division of Workers' Compensation, Department of Labor and Industrial Relations of Missouri. In each case, the Department sent its form lien notices[2] seeking to recover medical expenses paid by Medicaid. Plaintiffs settled their workers' compensation cases. Pursuant to Missouri law, an administrative law judge reviewed and approved Plaintiffs' settlements.

Each Plaintiff entered into a Stipulation of Compromise and Settlement ("Stipulation") as part of settlement. The Stipulations expressly state that each Plaintiffs' Settlement award is based, at least in part, on disability. The Stipulations do not expressly state that the settlements are based on or are meant to reimburse medical costs. The Stipulations make no formal findings concerning the validity of the liens. Each Stipulation contains language as follows:[3]

---

[1] The parties agree that Plaintiff Parsons is not a proper representative or class member: he was not a Medicaid recipient and the Department did not assert a Medicaid lien against his settlement award. The Court finds that Plaintiffs had adequate time to discover facts showing Plaintiff Parsons to be a proper representative or class member. Plaintiffs make no argument that they could do so, even if given additional time. Accordingly, the Court grants the Department's motion for summary judgment with regard to Plaintiff Parsons. Any reference to "Plaintiffs" does not include Parsons.

[2] There were two notices in Plaintiff Campbell's case, one in 1999 and one in 2000.

[3] The Court has prepared the following chart, based on a review of the Stipulations.

4

| Plaintiff | Disability | Medical Costs | Lien |
|-----------|-----------|---------------|------|
| Doran | "The settlement is based on an approximate disability of 12.5% to the body as a whole" | "Medical expenses have been paid in the amount of $813.19." | "Medicaid has asserted a lien against this claim in the amount of $2,550.06." |
| Campbell | "This settlement is based on an approximate disability of 25% of the body as a whole referable to the back" | "No medical expenses have been paid." | [Describes the lump-sum settlement amount due] "after deductions of: . . . $1,324.84 for a Medicaid lien." |
| Phillips | "This settlement is based on an approximate disability of 14% of body – back, right knee" | "That employer and insurer have paid medical expenses in the amount of $20,748.38." | "[Plaintiff Phillips] will pay the Medicaid lien." |

(Pl. Sugg. Supp. Mot. Summ. J. Exs. 1-3.)

The Department did not recover any money from Plaintiffs' workers' compensation cases in addition to the amount listed in their Stipulations.

Though contested by Plaintiffs, the head of the Department's Cost Recovery division states in an affidavit that the Department "had no way of knowing what the settlements that plaintiffs entered into were based on." (Def. Sugg. Opp. Mot. Summ. J. Ex. 11.) The affidavit further claims that the Department had no way of knowing whether the liens were satisfied out of portions of Plaintiffs' settlement awards meant to reimburse for disability. The Department did not enter its appearance in any of Plaintiffs' cases. It only issued the lien notices.

5

Plaintiffs filed a five-count complaint. Count I asserts violations of 42 U.S.C. § 1983 based on violation of 42 U.S.C. § 1396(k) and "U.S. Constitutional Amendments V [sic] and XIV." (Compl. at 9.) Count II claims a violation of the Missouri Constitution. Count III asserts unjust enrichment. Count IV is for breach of contract. Count V seeks injunctive relief alone.[4] On January 8, 2008, the Court dismissed Count II and portions of Count I. *See Doran v. Missouri Dep't of Social Servs.*, No. 07-4158-CV-C-NKL, 2008 WL 111290 (W.D. Mo. Jan. 8, 2008).

During the discovery process, the Department was advised that Plaintiff Doran died. The Department notified Doran's personal representative of a noticed deposition, but Doran's personal representative did not attend.

## II.     Discussion

In its motion for summary judgment, the Department argues: (1) certain affirmative defenses bar Plaintiffs claims; (2) statutes of limitations bar Plaintiffs' claims; (3) Plaintiff Doran's claims are barred for failure to appear at a deposition; and (4) the Department has complied with the requirements of *Ahlborn*.

### A.     Affirmative Defenses

The Department argues that Plaintiffs' claims are barred by the affirmative defenses of *res judicata*, "compromise and settlement," "waiver by acquiescence," and

---

[4] From the parties' motions, it is clear that they both understand Plaintiffs to be alleging a violation of 42 U.S.C. § 1396p(a)(1) (the Federal Anti-Lien Statute), read in conjunction with 42 U.S.C. § 1396(k).

6

failure to raise a constitutional claim at the earliest opportunity. The Department's primary thrust of the argument is that the Plaintiffs should have challenged the Medicaid liens in their workers' compensation proceedings, and by failing to do so, the Plaintiffs have forfeited their right to challenge the Medicaid liens in this Court.

### 1. Waiver of Affirmative Defenses

The Department raises several of their affirmative defenses for the first time in its summary judgment motion. The Department did not plead in its answer compromise and settlement, waiver by acquiescence, or failure to raise a constitutional claim at the earliest opportunity. At no time did the Department seek to amend its Answer to include these additional defenses. Plaintiffs argue that, as a consequence, they were denied a reasonable opportunity to ascertain whether the Department's new defenses are grounded in fact.

Under Rule 8(c) of the Federal Rules of Civil Procedure, failure to plead an affirmative defense generally results in a waiver of that defense. *First Union Nat. Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 622 (8th Cir. 2007). However, the "Rule 8(c) pleading requirement is intended to give the opposing party both notice of the affirmative defense and an opportunity to rebut it." *Id.* (citations omitted). Therefore, the Eighth Circuit has "eschewed a literal interpretation of the Rule that places form over substance . . . and instead [has] held that when an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal." *Id.* (citations and original punctuation omitted). Consequently,

where circumstances merit it, courts may accept affirmative defenses raised at various stages of litigation, including summary judgment. *See id.*, n. 5.

Although the Department did not expressly plead all the affirmative defenses it now identifies in its motion for summary judgment, it did raise other affirmative defenses which are functionally the same or similar. For example, "compromise and settlement" is a subspecies of "accord and satisfaction." *See supra* Part I.A.3. The Department's Answer specifically pleads accord and satisfaction. Thus, Plaintiffs were on notice of the issues raised by the compromise and settlement defense.

Furthermore, affirmative defenses that the Department did expressly raise in its Answer factually concern the same issues as the new defenses – whether and when Plaintiffs should have challenged the liens. Plaintiffs had an opportunity to explore those issues throughout discovery. Because the Department's Answer placed Plaintiffs on notice of the issues surrounding its additional defenses, the Court will treat the new affirmative defenses as an amendment to the Defendants' Answer.

### 2. *Res Judicata*

Under a heading of "*Res Judicata*," the Department argues that the workers' compensation settlements resolved any issues surrounding the liens. "The test applied to determine whether *res judicata* bars litigation of a claim is: (1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the judgment was a final judgment on the merits, and (3) whether the same cause of action and same parties or their privies were involved in both cases." *Gurley v. Hunt*, 287 F.3d 728 (8th

8

Cir. 2002) (citation omitted).  The Department cannot establish the third element because it was not a party to Plaintiffs' workers' compensation action.  As a matter of law, the Department's *res judicata* defense fails.[5]

### 3.    Compromise and Settlement

Under its heading of "Compromise and Settlement," the Department argues that Plaintiffs' claims are barred because (a) they signed stipulations which resolve the Department's liens and (b) the Plaintiffs do not argue that the stipulations "were not complied with."

Compromise and settlement is a subspecies of accord and satisfaction reserved for settlement agreements.  *Ingram v. Rinehart*, 108 S.W.3d 783, 789-90 (Mo. App. Ct. 2003).  "[T]he distinction between compromise and settlement, and accord and satisfaction, is now regarded by most courts and authorities as slight, and the terms are often used interchangeably."  *Id.* at 789 (citation omitted).  Both require an agreement and performance.  "An accord and satisfaction is an agreement between parties to give and accept something different from that claimed by virtue of the original obligation."  *Dixon*

---

[5] Any argument that Plaintiffs claims are barred under the doctrine of collateral estoppel also fails.  Collateral estoppel bars an action where: 1) an identical issue existed in prior litigation; 2) which ended in a judgment on the merits; 3) involving the same party; and 4) the issue was fully and fairly litigated and necessary to the judgment.  *DePugh v. Clemens*, 966 F. Supp. 898 (W.D. Mo. 1997), *aff'd*, 129 F.3d 121 (8th Cir. 1997).  The issue of lien validity was not raised in Plaintiffs' workers' compensation proceedings; that issue was neither litigated nor considered in any judgment or settlement of the workers' compensation proceedings.  Therefore, collateral estoppel does not bar Plaintiffs' claims. *See Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrecoverable Trust Dated June 27, 2002*, 410 F.3d 304, 312-14 (6th Cir. 2005) (finding under Michigan and New York law that approval of settlement did not collaterally estop challenge to lien on proceeds of settlement).

9

*v. Brannan*, 970 S.W.2d 384, 385 (Mo. App. Ct. 1998) (citation omitted). An accord and satisfaction must encompass the traditional contract elements of offer, acceptance, and consideration. *Id.*

For example, in *Paopao v. State, Dep't of Social & Health Servs.*, 185 P.3d 640, 645 (Wash. Ct. App. 2008), the Court of Appeals of Washington found – based on accord and satisfaction – that a Medicaid recipient was barred from challenging her medicaid reimbursement lien under the *Ahlborn* line of cases. *Id.* at 645. In *Paopao*, the social services department paid medical bills on behalf of plaintiff Paopao following an auto accident. *Id.* at 642-43. The social services department then asserted a lien on any amount Paopao received from her insurance company or from the driver who caused the accident. *Id.* at 643. Paopao settled with her insurance company and the driver; the settlements were not apportioned between medical expenses and other losses. *Id.* After negotiating *directly with the social services department* as to the amount of the Medicaid lien, Paopao settled with the social services department and agreed to pay an amount less than the original lien amount. *Id.* The letter accompanying Paopao's payment to the social services department stated that the payment was made "in full accord and satisfaction" of all monies owed on any Medicaid lien. *Id.* at 644. The *Paopao* court held that, by entering into the agreement and making payment, Paopao waived any claim she had under *Ahlborn*.

The instant case differs from *Paopao* and other cases finding accord and satisfaction because Plaintiffs did not negotiate with the Department concerning its lien.

10

Nor did Plaintiffs enter into any settlement agreements with the Department. The Department is not a party to the stipulations from the workers' compensation proceedings, and the Department alleges no contract between it and Plaintiffs. Therefore, the stipulations do not represent an accord and satisfaction between Plaintiffs and the Department. Of course, any dispute about the liens which Plaintiffs had with their employers or workers' compensation insurance carrier cannot be relitigated as to those parties.

### 4. Waiver by Acquiescence

Under a heading of "Waiver by Acquiescence," the Department states that Plaintiffs relinquished their claims when they paid the liens out of their settlement awards. As one Missouri court recently explained:

> Waiver by acquiescence is an equitable doctrine often used by persons attempting to quash executions on judgments for [alimony] and/or child support. . . . Parties utilize the doctrine in an attempt to bypass the general rule that neither side may modify or ignore a court order. . . . Waiver by acquiescence is an affirmative defense, and the party asserting such defense must sustain the burden of proof.
>
> To invoke the doctrine of waiver by acquiescence, the obligor must show more than an agreement by the obligee to accept reduced payments or a delay in demanding full payment. . . . Waiver by acquiescence does not arise in the absence of some fact or circumstance which warrants the invocation of equitable considerations in order to avoid injustice.

*Foster v. Foster*, 39 S.W.3d 523, 530 (Mo. App. Ct. 2001).[6]

In support of its waiver by acquiescence argument, the Department cites only to

---

[6] The overwhelming majority of cases in which courts discuss waiver by acquiescence are either divorce or child support cases.

three divorce cases and one child support case. In *Perkel v. Stringfellow*, 19 S.W.3d 141(Mo. App. Ct. 2000), the court held that a former husband could not assert a new claim against his former wife that challenged an order entered in the separate dissolution proceedings. In *Schulte v. Schulte*, 949 S.W.2d 225 (Mo. App. Ct. 1997), the court found that a husband could not challenge on appeal the terms of a dissolution judgment regarding sale of stock to his wife after he had surrendered the stock to her. In *State ex rel. York v. Daugherty*, 969 S.W.2d 223 (Mo. 1998), the court held that former spouses could not challenge their dissolution proceedings by way of a mandamus proceeding against the administrative judge. In *State, Department of Social Services, Division of Child Support Enforcement v. Houston*, 989 S.W.2d 950 (Mo. 1999), the court found that a father could not contest the validity of a child support order where he failed to object to the order and failed to contest a subsequent lien enforcing the order. Without explanation, the Department argues that its cited cases support a finding that Plaintiffs waived their claims by acquiescing to the benefits and burdens of their workers's compensation settlements.

The Court disagrees. Unlike the plaintiffs in the Department's cited cases, Plaintiffs do not seek to challenge the workers' compensation settlements themselves, or issues actually adjudicated in the underlying workers' compensation proceedings. Unlike the plaintiffs in the Department's cited cases, Plaintiffs do not now bring suit against the parties they sued in their workers compensation proceedings, or the administrative law judge who approved their workers' compensation settlements. This case does not concern

12

Plaintiffs accepting any money from the Department; it does not concern the Department agreeing to reduced payments. Therefore, there has been no "waiver by acquiescence" as argued by the Department.

The Department may be arguing that Plaintiffs' claims are barred by the voluntary payment doctrine. That doctrine "indicates that a person who voluntarily pays money with full knowledge of all the facts in the case, and in the absence of fraud and duress, cannot recover it." *Eisel v. Midwest BankCentre*, 230 S.W.3d 335, 339 (Mo. 2007). Where a party could have recognized that it had a right to object to a payment, it may not pay first and object later. *See Huch v. Charter Commc'ns, Inc.*, — S.W.3d. —, No. ED 89926, 2008 WL 1721868, at *5 (Mo. App. Ct. Apr. 15, 2008).

*Eisel* concerned a bank charging document preparation fees for performing acts which constituted the unauthorized practice of law. *Id.* at 339. The bank argued that it should not have to refund those fees because the plaintiff bank customers had paid the fees voluntarily. *Id.* The *Eisel* court found that "the activities prohibited by [the unauthorized practice of law statute] are not subject to waiver, consent or lack of objection by the victim." *Id.* (citation omitted). *Id.* The *Eisel* court refused to burden customers – as opposed to the bank – with the responsibility of recognizing the unauthorized practice of law; thus, the *Eisel* court refused to apply the voluntary payment to bar recovery where the customers failed to recognize the statutory violation. *Id.* at 349-40.

*Huch* addressed an action by cable television subscribers to recover fees paid for

13

unsolicited television channels. *See Huch*, 2008 WL 1721868, at *4. The subscribers had

received bills listing charges for the unsolicited channels. *Id.* In considering *Eisel*, the

*Huch* court noted (1) that bank customers, as laypeople, should not be held to recognize

the unauthorized practice of law, and (2) that legal services cannot legally be provided by

a non-lawyer bank to its customers. *Id.* In applying the voluntary payment doctrine and

distinguishing *Eisel*, the *Huch* court observed that (1) cable subscribers could readily

recognize whether they had been billed for channels to which they had not subscribed,

and (2) that a television channel can legally be sold to a cable subscriber. *Id.*

        Plaintiffs are more like the *Eisel* bank customers than they are like the *Huch* cable

subscribers. As medicaid recipients, Plaintiffs should not be burdened with the

responsibility of recognizing a violation of the Federal Anti-Lien Statute, a somewhat

technical statute not readily known or understood by laypeople. The Department bears

the burden of complying with the Federal Anti-Lien statute. *See Alexander v. Choate*,

469 U.S. 287, 289 n. 1 (1985) (noting that states choosing to participate in federal

Medicaid program must comply with Medicaid Act). The Federal Anti-Lien Statute

makes no provision for waiver by a Medicaid recipient. The Department makes no

argument that Plaintiffs actually did know of the alleged violations. "Full knowledge" is

an element of the voluntary payment doctrine. Therefore, the Department has not

established that Plaintiffs waived a right to recovery by voluntarily paying the liens as

asserted by the Department.

        **5.      Failure to Raise Constitutional Challenges at Earliest**

**Opportunity.**

The Department argues that Plaintiffs' constitutional challenges are barred because Plaintiffs failed to raise them before the Labor and Industrial Relations Commission ("Commission"). Claims based on constitutional violations are waived if not raised at the earliest possible opportunity. *See State ex rel. York v. Daugherty*, 969 S.W.2d 223, 224 (Mo. 1998) (citations omitted). This prevents parties from waiting until they lose a case and then, "in contravention of a statute and the Constitution itself," picking and choosing their appellate forums by way of belated constitutional claims. *Duncan v. Missouri Bd. for Architects, Prof. Engineers & Land Surveyors*, 744 S.W.2d 524, 531 (citation omitted). "The critical question in determining whether waiver occurs is whether the party affected had a reasonable opportunity to raise the unconstitutional act or statute by timely asserting the claim before a court of law." *Daugherty*, 969 S.W.2d at 225 (citation omitted). To show that Plaintiffs had such a reasonable opportunity before the Commission, the Department must show that (1) the Commission had jurisdiction to hear Plaintiffs' constitutional claims, *see id.,* and (2) that the constitutional claims could have been considered by the Commission in Plaintiffs' case.

The Department has not shown that the Commission had jurisdiction over the constitutional claims. The Commission is an administrative agency created by statute, and has no more authority than that granted to it by statute. *Hunt v. Laclede Gas Co.*, 869 S.W.2d 770, 773 (Mo. Ct. App. 1993); *see also Carr v. North Kansas City Bev. Co.*, 49 S.W.3d 205, 207 (Mo. Ct. App. 2001) (citations omitted). As such, if the Commission is

15

to have jurisdiction over Plaintiffs' constitutional claims, that jurisdiction must be granted by statute.

The Commission does have general authority to review workers' compensation decisions. Mo. Rev. Stat. § 287.480. Section 287.480 of the Missouri Revised Statutes provides that, "if an application for review is made," the Commission "shall review the evidence, . . . and shall make an award and file it . . . ." *Id.*

Considering the workers' compensation statutes, the *Hunt* court found that the Commission lacked authority to allocate attorney fees between two attorneys asserting liens in a workers' compensation case. *Hunt*, 869 S.W.2d at 773. In *Hunt*, the administrative law judge in the workers' compensation case had allocated attorney fees between the two attorneys. *Id.* at 772. After the Commission affirmed that allocation, the *Hunt* court considered whether the Commission had authority to do so. *Id.* Citing to the statute concerning attorney fees in workers' compensation cases, the *Hunt* court recognized that the Commission did have authority to determine whether attorney fees were fair and reasonable. *Id. at 773.* However, the *Hunt* court did not "believe this legislative authorization can be construed as vesting the Commission with judicial power to decide complex legal issues" pertaining to whether particular attorneys were entitled to collect fees. *Id.* In part because the Commission did not have such power, the *Hunt* court reversed. *Id.*

Similarly, this Court, absent some evidence from the Department, will not construe Section 287.480 to grant the Commission with judicial power to decide complex legal

16

issues pertaining to the constitutionality of a third party's lien.  *See Hunt*, 869 S.W.2d at 773.

Even if the Commission had jurisdiction, the Department has not shown that Plaintiffs' constitutional challenges could have been properly raised before the Commission.  Section 287.480 directs the Commission to review the evidence before the administrative law judge.  There was no evidence before the Plaintiffs' administrative law judges concerning lien validity and no decision by the administrative law judges concerning the liens.  Thus, the lien issue could not have been raised before the Commission.[7]

Because the Department has not established that Plaintiffs had a reasonable opportunity to raise their constitutional claims before the Commission, the Court rejects the Department's waiver argument.

**B.      Statutes of Limitations**

The Department asserts that Plaintiffs' claims are barred by two separate statutes of limitations.

**1.      Three-Year Statute of Limitations**

First, the Department seems to argue that the three-year statute of limitations set

_____

[7] In contrast to the instant case, the administrative law judge in *Hunt* had decided – albeit improperly – allocation of attorney fees between the two attorneys; thus, in asking the Commission to review that allocation, the parties in *Hunt* were asking the Commission to review an issue decided by the administrative law judge.  *See id.*

forth in Section 516.130 of the Missouri Revised Statutes bars Plaintiffs' claims.[8]  That

section applies to actions against certain law enforcement officials acting in their official

capacities and to actions for a penalty or forfeiture.  The Department offers no argument

as to how the instant action falls within either of these categories.  The Department has

not established that Section 516.130 applies to Plaintiffs' claims.  *See Hawley v. Nelson*,

968 F. Supp. 1372, 1384 (E.D. Mo. 1997), *aff'd* 141 F.3d 1168 (8th Cir. 1998) (finding

Section 516.130 inapplicable to § 1983 actions).

### 2.        Five-Year Statute of Limitations as Applied to Plaintiff Campbell

Second, the Department asserts the five-year statute of limitations set forth in

Section 516.120 of the Missouri Revised Statutes against Plaintiff Campbell's claims.

The Department argues that her claims arose in 1999 and 2000, when the Department

issued lien notices in her workers' compensation case, and her current claims are therefore

barred.

Plaintiffs do not dispute a five year statute of limitations.  Rather, they counter that

Plaintiff Campbell's claims arose when the funds were paid from her settlement award to

the Department on August 22, 2001.  Plaintiffs argue that this date was within five years

of Plaintiff Campbell's "original Petition"; Plaintiffs do not explain to which "Petition"

---

[8] The Department actually cited to Section 536.130, concerning records on appeal of
administrative agency decisions.   Plaintiffs responded that this section does not concern statutes
of limitations.  The Department made no further argument or correction.  If it intended to rely on
Section 536.130, the Court finds that statute inapplicable as well.

18

they are referring.  The Court's ECF file indicates that Plaintiff Campbell's claim was filed more than five years after she argues her claim accrued.  The Complaint in this case was filed on August 15, 2007.  [Doc. # 1.]  Plaintiff Campbell filed her motion for permissive joinder on November 30, 2007, without mentioning any prior, related claims.  [Doc. # 16.]  Neither date is within five years of August 22, 2001, the date Plaintiff Campbell argues her claim accrued.  Even if Plaintiff Campbell's permissively joined claim is considered as having been filed on the date of the original Complaint in this case, it was filed more than five years after her claim accrued.

Given the Court's records and Plaintiff Campbell's admission that her claim arose on August 22, 2001, the Court finds that Campbell's claims are barred by Section 516.120 of the Missouri Revised Statutes.

### C.    Plaintiff Doran's Failure to Appear for Deposition

With regard to Plaintiff Doran specifically, the Department argues that her entire claim should be barred because her personal representative failed to show up for one noticed deposition.  Plaintiff Doran died in the fall of 2007.  The Department noticed the deposition of her personal representative eight days before the close of discovery.  Other than noticing the original deposition, it appears that the Department did not avail itself of any further opportunity to procure Plaintiff Doran's deposition, such as by noticing another date or contacting the Court for resolution of the issue.  The Department does not present testimony from any of the remaining Plaintiffs in support of its motion for summary judgment, or argue how it might have used the testimony of Plaintiff Doran.  As

19

such, the Court declines to issue the harsh sanction of summary judgment based on Plaintiff Doran's failure to appear at a deposition. *See generally* Fed. R. Civ. P. 37(d). The Court denies the Department's motion concerning Doran's personal representative's failure to appear for deposition.

### D.      Compliance with Federal Anti-Lien Statute

The Department also moves for summary judgment on the basis that it "substantively complies with *Ahlborn*." In so arguing, the Department mis-states the primary holding of *Ahlborn*. The Department argues that *Ahlborn* holds, "Medicaid liens may only cover medical care and services that the beneficiary incurs." (Def. Mot. Summ. J. & Sugg. Supp. at 13.) The Department offers an affidavit to show that it complied with this holding. The affidavit states that the Department has asserted liens to recover only the medical costs it paid on behalf of Plaintiffs.

However, the Department's argument does not recognize the primary holding of the *Ahlborn* line of cases. *Ahlborn* stands for the proposition that a state may assert and collect on its Medicaid liens – but it may not assert a right to, or collect, payment of those liens from non-medical settlement awards. *See Ahlborn*, 397 F.3d at 628; *Arkansas Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. at 280.

The Department admits that federal law prohibits it from asserting – or collecting on – its liens from non-medical settlement awards. It admits that its liens are invalid if it violates this rule. While the Department argues that it does not seek to recover from non-medical settlement awards, the Department admits that its lien notices demand

20

reimbursement from "any funds" received for "any compensable injury, occupational disease or disability." Settlement awards based on "disability" are not settlement awards based on medical costs. Thus, the Department expressly asserts a lien on non-medical settlement awards. This is in violation of the Federal Anti-Lien Statute as clarified by *Ahlborn*.

The Department argues that it is following the current Missouri statutory and regulatory system. To the extent that system allows the Department to assert, and collect from, non-medical portions of settlement awards, the system is preempted by the Federal Anti-Lien Statute. *See Ahlborn*, 397 F.3d at 628. The Department bears the burden of complying with the Federal Anti-Lien Statute, which is part of the federal Medicaid Act. *See Alexander v. Choate*, 469 U.S. 287, 289 n. 1 (1985) (noting that states choosing to participate in federal Medicaid program must comply with Medicaid Act). To the extent that the Department has collected its liens from non-medical portions of settlement awards, it has violated the Federal Anti-Lien Statute.

Plaintiffs offer affirmative evidence that the Department collected its liens from non-medical portions of their settlement awards. Although not entirely clear, the stipulations state that the settlements are "based on" disability; they do not state that they are based on medical costs. Plaintiffs attach to their reply brief an affidavit from their workers' compensation attorney stating that no medical costs were reimbursed as part of the workers' compensation settlements at issue. Given the evidence presented by the

parties,[9] the Court cannot find as a matter of law that the Department is in compliance

with *Ahlborn*. Thus, the Court denies the Department's motion with regard to *Ahlborn*

compliance.

## III.    CONCLUSION

Accordingly, it is hereby

ORDERED that the Department's motion for summary judgment [Doc. 54] is

GRANTED as to Plaintiff Parsons and otherwise DENIED.


                                              s/ Nanette K. Laughrey
                                              NANETTE K. LAUGHREY
                                              United States District Judge


Dated:  September 2, 2008
Jefferson City, Missouri

---

[9] The Department does not offer affirmative evidence showing that it collected only from
medical portions of settlement awards. Instead, the Department argues that it could not have
determined the basis of Plaintiffs' particular settlement awards. In support of this argument, the
Department offers the affidavit of the head of its Cost Recovery division; the affidavit states that
the Department "had no way of knowing" the basis of Plaintiffs' settlement awards. The
Department does not contend that it made an attempt to know whether it was collecting from
non-medical awards. The Department admits that it has taken no steps to comply with *Ahlborn*
since its release by the Eighth Circuit.